# United States Court of Appeals
## For the First Circuit

No. 06-2006

UNITED STATES OF AMERICA,

Appellee,

v.

ANDRE PAGE,

Defendant, Appellant.

No. 06-2007

UNITED STATES OF AMERICA,

Appellee,

v.

MICHAEL E. GREEN,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lipez, Circuit Judge,

Cyr, Senior Circuit Judge,

and Howard, Circuit Judge.

Todd A. Bussert, with whom Law Office of Todd A. Bussert was on brief for appellant Andre Page.

Melvin Norris, with whom Richard J. Farrell, Jr. was on brief for appellant Michael E. Green.

Mark T. Quinlivan, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

---

March 28, 2008

---

**CYR, Senior Circuit Judge.** Andre Page and Michael E. Green appeal from their judgments of conviction for possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), and conspiracy, id. § 846. We affirm.

I

## BACKGROUND

In 2004, the Federal Bureau of Immigration and Customs Enforcement (ICE) began an investigation of Raymond Austin, a resident of Guyana. The ICE learned that Austin was smuggling cocaine into the United States, and that his "nephew" Wallstein Dwayne Allen had been picking up these cocaine deliveries in New York for Austin. To infiltrate the Austin-Allen drug operation, undercover ICE Agent Michael Hedrick (Agent Hedrick) posed as a boat captain offering to transport the cocaine into the United States for Austin. On March 12, 2004, Agent Hedrick met with Allen and a companion at a Boston restaurant, where Allen gave Agent Hedrick $15,000 to cover the expenses of an upcoming boat trip to Guyana to pick up cocaine from Austin. Agent Hedrick and Allen agreed that Allen would take delivery of the cocaine in Boston upon his return.

In May 2004, Agent Hedrick picked up 105 kilos of cocaine off the coast of South America, and the ICE shipped the cocaine back to an East Boston warehouse in preparation for the controlled delivery to Allen. Agent Hedrick phoned Allen in New York to

-3-

arrange a meeting on June 5 at the same Boston restaurant where they previously had met in March, and told Allen that they would proceed from the restaurant to the warehouse where Allen would take delivery of the smuggled cocaine.

In late May, appellant Andre Page, a drug dealer to whom Allen regularly had supplied cocaine for resale, asked Allen if he had any "work" (which in drug parlance means "cocaine") for him, and Allen invited Page to travel with him from New York to Boston on June 5 to obtain some "work." Page recommended that Allen also take along appellant Michael Green. Allen apparently believed that he needed Page and Green for protection; both men were over six feet tall and weighed in excess of two hundred pounds.

On June 5, 2004, Allen, Page, and Green left New York in two vehicles to travel to Boston, carrying $200,000 in cash to pay Agent Hedrick for the smuggled cocaine. Before leaving, however, Page asked Allen what was in the bag, and Allen answered: "the money." Meanwhile, Agent Hedrick and a female undercover agent posing as his girlfriend went to the Boston restaurant for the rendezvous, which was being videotaped by the ICE. When Allen, Page and Green arrived at the mall where the restaurant was located, they shopped briefly while waiting for Agent Hedrick to contact them on their cell phone. When the trio finally arrived at the restaurant, Agent Hedrick greeted Allen, but Allen introduced neither Page or Green, who went to sit at another table nearby.

-4-

Agent Hedrick, his sham "girlfriend," and Allen discussed the
cocaine delivery, and agreed that Allen and appellants Page and
Green were to follow in Agent Hedrick's car to the warehouse where
the cocaine was stashed. Allen left the restaurant with Page and
Green, then rendezvoused in their two vehicles with Agent Hedrick's
car outside the mall.

        When they arrived at the warehouse, Page remained outside
in a vehicle with Agent Hedrick's "girlfriend," while Hedrick,
Allen and Green went inside to consummate the delivery. Agent
Hedrick opened one of the bags containing the cocaine and showed it
to Allen and Green, noting that it was "six or seven packs each one
for a total of 105 kilos." Agent Hedrick told Allen and Green that
he was going outside to check on his "girlfriend," and Allen and
Green began to pack the cocaine into their vehicles. The ICE placed
Allen, Page and Green under arrest.

        In August 2004, Allen, Page, and Green were indicted for
possession of cocaine with intent to distribute, 21 U.S.C. §
841(a)(1), and for conspiring to do the same, id. § 846.    The
district court denied the Page motion to sever his trial from that
of his co-defendants. At trial, Page and Green presented a defense
theory that they unwittingly accompanied Allen to Boston on June 5,
thinking that it was merely a shopping trip, and that they knew
nothing about the cocaine delivery previously arranged between
Agent Hedrick and Allen.   The jury rejected their theory, then

                                -5-

found Page and Green guilty on both the substantive and conspiracy counts.    On appeal, Page and Green challenge their respective convictions.[1]

## II

## DISCUSSION

### A.    The Page Appeal

#### 1.    The Evidentiary Rulings

##### a.    Admissibility of Agent Hedrick's Testimony

Page first contends that the district court abused its discretion in permitting Agent Hedrick to testify that, in his prior experience as a drug enforcement officer, drug dealers' typical modus operandi is to have burly individuals, like Page and Green, accompany them during drug transactions to provide protective countersurveillance against police drug stings, because this testimony purported to be an expert opinion which the government failed to disclose to the defense prior to trial as required by Federal Rule of Criminal Procedure 16.

We normally review district court evidentiary rulings to which an appellant has raised a contemporaneous objection for an abuse of discretion only, but to the extent the ruling turns purely on a legal issue, we employ plenary review.   United States v. Malpica-Garcia, 489 F.3d 393, 395 (1st Cir.), cert. denied, 128 S.

_____

[1]The   district   court   sentenced   Page   to   240   months' imprisonment, Green to 63 months; neither defendant appeals his sentence.

-6-

Ct. 316 (2007). The district court did not err in this instance. Experience-derived police testimony concerning criminals' typical modi operandi during a drug transaction does not constitute expert testimony, but lay-witness testimony admissible under Federal Rule of Evidence 701 without any necessity for pretrial disclosure to the defense. See United States v. Ayala-Pizarro, 407 F.3d 25, 28 (1st Cir. 2005).[2]

Page further contends that the district court abused its discretion by permitting Agent Hedrick to testify, in conjunction with his lay testimony regarding drug dealers' countersurveillance practices, that he did not know "at that time" what Page and Green were doing during the time periods in which they were out of his "sight-line" on June 5, 2004, since the jury speculatively may have inferred from this wording that Agent Hedrick later had obtained evidence which the government did not adduce at trial, and which definitively demonstrated that Page and Green had been engaged in countersurveillance during the time periods when they were out of Agent Hedrick's sight.

Since Page did not object contemporaneously to the

___

[2]Given the uncontested evidence that Agent Hedrick served for sixteen years in drug-law enforcement, we also reject Page's appellate assertion that the government failed to establish that Hedrick had sufficient personal knowledge upon which to base his testimony, as required under Federal Rule of Evidence 602. See United States v. Carlos Cruz, 352 F.3d 499, 505 (1st Cir. 2003) (finding a sufficient Rule 602 foundation where the testifying police officer had six years of experience in drug-law enforcement).

Hedrick statement, we review for plain error, which requires that he demonstrate an obvious error which affected his substantial rights, and seriously compromised the fairness, integrity or public reputation of judicial proceedings.  United States v. Duval, 496 F.3d 64, 76 (1st Cir. 2007). Although the government's reliance on matters not in evidence certainly would be improper, see United States v. Auch, 187 F.3d 125, 129 (1st Cir. 1999), Agent Hedrick's statement - "I don't know [what Page and Green were doing] at that time." - may invite, but hardly compels, the attenuated inference that he later learned of additional evidence of the appellants' countersurveillance activities. The more likely inference is that Agent Hedrick merely made the unremarkable concession that he could not have been aware of appellants' actions while they were out of his line of sight. Defense counsel, who lodged no objection to the testimony, seemingly drew this more innocuous inference. Further, the government at no time argued to the jury that Agent Hedrick had testified that he subsequently learned of undisclosed evidence which confirmed his belief that Page and Green were engaged in countersurveillance on June 5, 2004. Thus, Page falls well short of hurdling the "plain error" standard of review.

For these reasons, we conclude that the district court did not err in admitting Agent Hedrick's challenged testimony in evidence.

**b.    The Admissibility of the May 2004 Audiotape**

Page next contends that the district court erred in permitting the government to play an audiotape of a May 21, 2004 phone conversation between Allen and "Kareem," one of Allen's other drug-dealing associates, about an ongoing drug transaction in which Page can be heard in the background (on Kareem's end of the line), and during which Allen instructs Kareem to give Page a share of Allen's drug proceeds. Page asserts that the audiotape constitutes inadmissible hearsay, which cannot come within the hearsay exception as a statement of a coconspirator, because the government did not allege that Kareem was Page's coconspirator in the June 5 drug delivery scheme, see Fed. R. Evid. 801(d)(2)(E).

The admission of the May 21, 2004 phone call was not an abuse of discretion.  Malpica-Garcia, 489 F.3d at 395.  The prosecution expressly represented to the district court that it was not offering the audiotape to prove the drug transaction described in the phone conversation. See United States v. Maher, 454 F.3d 13, 20 (1st Cir.), cert. denied, 127 S. Ct. 568 (2006) (citing the "long-established exception to the hearsay rule for statements not offered for the truth of the matter").  Evidence is not inadmissible hearsay if used only for the limited purpose of establishing "background" or "context" information regarding the trust relationship previously existing between Allen and Page, such that Allen willingly would tell Kareem to give Page some of the

-9-

drug proceeds. See, e.g., United States v. Flemmi, 402 F.3d 79, 93 n.21 (1st Cir. 2005) (finding no hearsay problem with "background" evidence concerning prior "development of . . . [a] criminal relationship"); United States v. Bolick, 917 F.2d 135, 144-145 (4th Cir. 1990) ("Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed."); United States v. Johnson, 872 F.2d 612, 622 (5th Cir. 1989) (same, where evidence was used "to establish the background and developing relationship between the men"). The government sought to establish that Page knowingly acted as countersurveillance for Allen during the June 5 drug transaction, and to rebut Page's theory that he unwittingly accompanied Allen on what he believed was a shopping trip. The audiotape clearly offered important refutative context for this defense theory, and the district court acted well within its discretion in admitting it for this circumscribed purpose.[3]

## 2.  The Government's Closing Argument

Page next contends that the district court failed, sua

---

[3]Notably, Page did not ask the district court for a contemporaneous jury instruction that the audiotape be considered only for its more limited "background" relevance, and Page therefore cannot complain that the jury might have used it for broader purposes. See United States v. Murphy, 193 F.3d 1, 5 n.2 (1st Cir. 1999) ("[W]here a statement is offered for non-hearsay [e.g., background] uses, the defendant may be entitled to an instruction limiting its use, but only if he asks for it.").

-10-

sponte, to strike a portion of the prosecutor's closing argument as improper vouching. Allen's plea agreement required him to testify truthfully at his joint trial with Page and Green. In closing, the government noted Allen's trial testimony that his brother Mark had sold an illegal gun for him after Allen was arrested, and the prosecutor suggested to the jury that because Allen's damning admission would have subjected his brother to a federal firearms prosecution, the jury reasonably could infer that all of Allen's trial testimony (e.g., Page's knowing participation in the drug delivery) was also truthful.

As Page did not object to the closing comments, we review them only for plain error. United States v. Shoup, 476 F.3d 38, 43 (1st Cir. 2007) (noting that appellant must establish that erroneous closing remarks "'so poisoned the well that the trial's outcome was likely affected'") (citation omitted). A prosecutor impermissibly vouches for a witness only if he places the prestige of his office behind the government's case by adverting to his own personal belief and trust in the witness's truthfulness, but a prosecutor is not prohibited from pointing to specific record evidence (e.g., a plea agreement), and suggesting to the jury how these particular facts may have provided the witness with an incentive to testify truthfully. See United States v. Hansen, 434 F.3d 92, 101 (1st Cir.), cert. denied, 127 S. Ct. 203 (2006). Thus, the mere fact that the government pointed out that the Allen

testimony may have implicated his brother in a federal crime does not constitute impermissible vouching.

The government concedes, however, that it was inadvisable for the prosecutor, seemingly at least, to imply that Allen's brother's possession and sale of a gun had rendered him subject to prosecution under federal law, since the jury may have inferred that the prosecutor based this assertion on facts which were not introduced in evidence. See United States v. Tajeddini, 996 F.2d 1278, 1284 (1st Cir. 1993) (noting that it is improper for a prosecutor to even "seem to rely on matters not in evidence").

In determining whether this defect fatally "poisoned the well," however, we must consider, inter alia, the frequency and deliberateness of the prosecutor's comments, the strength and clarity of the trial judge's curative instructions, and the overall strength of the government's case against appellant. See United States v. Smith, 101 F.3d 202, 213 (1st Cir. 1996). Here, the prosecutor's comment was isolated, brief, and seemingly unintentional. Moreover, the district court emphatically instructed the jury that the prosecutor's closing remarks did not constitute evidence, United States v. Allen, 469 F.3d 11, 16 (1st Cir. 2006), cert. denied, 128 S. Ct. 41 (2007), and that "[t]he truthfulness of Mr. Allen is solely a question for you to decide." Finally, the prosecutor's comment pales in comparison to the other government evidence of Page's guilt adduced at trial, see infra

-12-

Section II.A.3. We discern no plain error.

## 3. **The Sufficiency of the Evidence**

Lastly, Page contends that the district court erred in denying the Page motion for judgment of acquittal because the record contains no evidence supporting a reasonable inference that Allen explicitly informed Page that they were going on the Boston trip to pick up cocaine, and Page's mere presence during Allen's transaction with Agent Hedrick proves, at most, that Page had accompanied Allen on what Page supposed was an innocent shopping excursion.

We review challenges to the sufficiency of the government's evidence de novo, viewing the trial evidence - including all witness credibility determinations - in the light most favorable to the jury verdict, and we will affirm a conviction if a reasonable jury could find that each element of the charged offense was established beyond a reasonable doubt. United States v. Lizardo, 445 F.3d 73, 81 (1st Cir.), cert. denied, 127 S. Ct. 524 (2006). Page challenges the sufficiency of evidence supporting the jury verdict solely on one element of the § 841(a)(1) offense: whether he "knowingly and intentionally" either possessed or imported illegal narcotics. See United States v. Thomas, 467 F.3d 49, 53 (1st Cir. 2006), cert. denied, 127 S. Ct. 1850 (2007). Page also contends that the government failed to adduce adequate evidence on each essential element of the § 846 drug conspiracy

charge:   whether there existed a conspiracy of which Page had
knowledge, and in which he voluntarily participated.  Lizardo, 445
F.3d at 81.

The   government  is  not  required  to  exclude  every
reasonable hypothesis of innocence advanced by the defense, as long
as the record as a whole supports a finding of guilt beyond a
reasonable doubt.   United States v. Rodriguez-Pacheco, 475 F.3d
434, 444 (1st Cir. 2007).   The jury was presented with ample
evidence from which it reasonably inferred that Page knew the
illegal purpose of Allen's Boston trip, and that Page accompanied
Allen  for  the  specific  purpose  of  providing  protective
countersurveillance during the June 5 drug transaction.   Allen
testified that he had provided Page with cocaine for resale on
several occasions in the past.   In their preliminary discussions
about the June 5 Boston trip, Page told Allen that Page was
"looking for work," and Allen told Page that he needed to pick up
some "work" in Boston.  Allen testified that "work" was the typical
drug-dealers' code for cocaine.  See, e.g., United States v. Woods,
210 F.3d 70, 77 (1st Cir. 2000); United States v. Benitez, 92 F.3d
528, 532 (7th Cir. 1996).  This evidence in itself, credited by the
jury as the arbiter of witness credibility, refuted Page's
contention that his actions on June 5 proved no more than that he
was an innocent bystander.

Further, the jury was entitled to infer from these

-14-

circumstances that Allen would not have allowed Page to accompany him at such proximity on June 5, unless Page himself was privy to the drug transaction, and prepared to step in if the transaction went sour. See, e.g., United States v. Mena-Robles, 4 F.3d 1026, 1032 (1st Cir. 1993) (rejecting evidentiary sufficiency challenge of an appellant who remained nearby in a restaurant during the offense, noting that drug dealers normally do not allow unknowing parties to witness their drug transactions, and that guilt may be inferred where a brawny individual stands close by during an illegal transaction, seemingly ready to give assistance if required). Given the damning record evidence recounted above, we reject Page's challenge to the sufficiency of the evidence.

## B.    The Green Appeal

### 1.    The Sufficiency of the Evidence

Green contends on appeal that the district court erred in denying his motion for judgment of acquittal, because, unlike Page, he had no prior knowledge of the purpose of the June 5 Boston trip, nor did he voluntarily and knowingly join in the Allen-Page conspiracy. The sufficiency challenge is readily dispatched.

The government adduced competent evidence that, after Green and the others arrived at the marina warehouse, Green heard Agent Hedrick state to Allen that the bags contained "six or seven packs each one for a total of 105 kilos," and that Green understood that "kilos" referred to cocaine. Since Green subsequently helped

-15-

to load these bags into the Allen vehicle for transport, the jury reasonably could infer both that Green had formed the requisite intent to possess that cocaine under § 841(a)(1), and further that Green had implicitly joined in and aided the Allen-Page conspiracy, see United States v. Pesaturo, 476 F.3d 60, 72 (1st Cir. 2007) (noting that "'a conspiracy may be based on a tacit agreement shown from an implicit working relationship'") (citation omitted). Given this evidence, it is utterly irrelevant whether or not the government had also adduced competent evidence that Green was aware of the purpose of the Boston trip at any time prior to his arrival at the warehouse. See United States v. Soto-Beniquez, 356 F.3d 1, 23 (1st Cir. 2004) ("Although [appellant] may have joined the conspiracy late, as long as he did so knowingly, he is liable for the conspiracy itself . . . ."). Accordingly, we uphold the jury verdicts against Green.[4]

---

[4]Green also suggests on appeal that the trial evidence compels an inference that he joined the Allen-Page conspiracy only under duress. We readily reject Green's contention. He elaborates on this argument only in his reply brief, see United States v. Eirby, 515 F.3d 31, 36 (1st Cir. 2008) (noting that issues "advanced for the first time in an appellant's reply brief are deemed to have been waived"), and he did not even request that the district court give a duress instruction to the jury, see United States v. Munoz-Franco, 487 F.3d 25, 54 (1st Cir.), cert. denied, 128 S. Ct. 678 (2007) (noting that a defendant waives an affirmative defense by failing to request a jury instruction on it), probably because Agent Hedrick testified that Green had appeared completely unagitated throughout the drug delivery at the warehouse.

## 2.   **The Severance Motion**

Finally, Page and Green contend that the district court erred in denying the Page pretrial motion to sever their trials, which was based on the Page contention that Green had made a post-arrest statement which would incriminate Page. Appellants argue that the court's ruling unduly chilled Green's pursuit of a vigorous defense, and that evidence highly prejudicial to Green, such as the long history of drug dealings between Allen and Page, would not have been relevant at Green's separate trial.

In denying the Page severance motion, the district court ordered the government to redact the incriminating portion of the Green post-arrest statement, and instructed Green's counsel not to adduce any other evidence that might inculpate Page. We normally review the denial of a motion to sever only for a manifest abuse of discretion. United States v. Tejeda, 481 F.3d 44, 54 (1st Cir.), cert. denied, 128 S. Ct. 612 (2007). "'[T]he general rule is that those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources, [and] severance is particularly difficult to obtain where, as here, multiple defendants share a single indictment.'" United States v. Casas, 425 F.3d 23, 37 (1st Cir. 2005) (citation omitted), cert. denied, 547 U.S. 1061 (2006); Fed. R. Crim. P. 8(b).

We need not reach the merits of the appellants' arguments. Since Green failed in the trial court either to submit

-17-

his own severance motion or expressly to join in the Page motion, Green has waived his right to challenge the decision to conduct a joint trial. See Fed. R. Crim. P. 12(b)(3)(D), (e); United States v. Pena-Lora, 225 F.3d 17, 33 (1st Cir. 2000).[5] On appeal, Page simply adopts by reference the Green challenge to the denial of Page's severance motion, see Fed. R. App. P. 28(i), wherein Green focused solely on how the denial harmed the Green defense. Page thus has presented no additional argumentation as to how the denial of severance might have caused him actual prejudice. United States v. David, 940 F.2d 722, 737 (1st Cir. 1991) ("Adoption by reference, however, cannot occur in a vacuum; to be meaningful, the arguments adopted must be readily transferrable from the proponent's case to the adopter's case."). Indeed, to the extent the district court's order might have limited Green's ability to inculpate Page, Page seemingly benefitted from the order. Accordingly, we treat these appellate arguments as having been waived.

**Affirmed.**

---

[5]Nonetheless, Green has not identified – as he would need to do in order to prevail on the merits – any specific item of inculpatory evidence which he was "chilled" from presenting by dint of the denial of the severance motion. See United States v. Rose, 104 F.3d 1408, 1415 (1st Cir. 1997) (noting that an appellant challenging the denial of a severance motion "must make a strong and specific showing of prejudice") (emphasis added); United States v. Yefsky, 994 F.2d 885, 896 (1st Cir. 1993) (noting that appellant has the "burden to articulate specific ways in which he was prejudiced" by the denial of severance) (emphasis added).